**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                        :
LUIS CARBARCAS,         :
                        :        Civil No. 05-2911 (FLW)
          Petitioner,   :
                        :
     v.                 :
                        :        MEMORANDUM OPINION
FEDERAL BUREAU OF PRISONS, :
et al.,                 :
                        :
          Respondent.   :
                        :
_____
```

**APPEARANCES:**

> LUIS CARBARCAS, Petitioner pro se
> #08289-058
> F.C.I. Fort Dix
> P.O. Box 2000
> Fort Dix, New Jersey 08640
>
> CHRISTOPHER J. CHRISTIE, United States Attorney
> IRENE E. DOWDY, Assistant U.S. Attorney
> 402 East State Street, Room 430
> Trenton, New Jersey 08608
> Counsel for Respondents

**WOLFSON, District Judge**

This matter is before the Court on petitioner Luis Carbarcas' ("Carbarcas") application for habeas corpus relief under 28 U.S.C. § 2241. Respondent filed an answer to the petition on or about July 18, 2005. The Court has reviewed all documents submitted and, for reasons now discussed, will deny the petition for lack of merit.

BACKGROUND

Carbarcas is presently in custody at F.C.I. Fort Dix in Fort Dix, New Jersey.  He was sentenced on August 19, 1991, in the United States District Court for the Western District of North Carolina, to a 30-year prison term with no parole for criminal violations under 21 U.S.C. §§ 848 and 841(a)(1), and 18 U.S.C. § 2.[1]  Carbarcas' projected release date is July 17, 2007, via mandatory release.  See Declaration of Diana Jacobs Lee ("Lee Decl.") at ¶ 3, and Exhibit A at pp. 3-5 ("SENTRY Public Inmate Information sheets).

In his petition, Carbarcas alleges that he began serving his federal sentence on September 29, 1991 at F.C.I. Fairton in New Jersey.  Carbarcas claims that the only good time credit he can earn is the industrial good time credits and lump sum awards under 28 C.F.R. § 523.16, as an "old law" prisoner.  It is with the BOP's allocation of lump sum awards that petitioner takes issue.

Carbarcas alleges that FCI Fairton is a cable factory, and that they make cable products for the military for use in tanks, ships, and airplanes.  In 1991, when the Gulf War was underway, the military increased its demand for cable products forcing FCI Fairton to institute a second shift (from 4:00 p.m. to midnight).

---

[1] Both the petitioner and the Government agree that the earliest date of Carbarcas' offense is December 31, 1983.

The inmates were needed to work both shifts, 7 days a week.  The "old law" inmates were told that they would receive additional lump sum awards for work above and beyond their normal UNICOR service.  Carbarcas claims he has never received his lump sum award for this work.  Further, in agreeing to receive lump sum awards of extra work credits, Carbarcas states that he declined to seek a higher pay grade level other than grade level two.

Carbarcas estimates that his lump sum awards would have computed at 990 days in contrast to the 60 days actually awarded by the Bureau of Prisons ("BOP").  As a result, if these lump sum awards were subtracted from his prison term, Carbarcas alleges that he was eligible for release on October 18, 2004.  He is 75 years old and has worked for the Federal Prison Industries for more than 132 months without incident.  He claims that he is 10 years past the national standard for receiving Social Security benefits.

In a counter-statement of facts, the BOP records indicate that Carbarcas was designated to FCI Fairton on October 29, 1991. He allegedly earned one year meritorious good time pursuant to 28 C.F.R. § 523.11.  In early 1992, Carbarcas began working in the Federal Prison Industries, Inc. (UNICOR),[2] and received

---

[2]   UNICOR is the trade name for the Federal Prison Industries, Inc., a wholly-owned government corporation statutorily created in 1934 to provide work programs and training opportunities for inmates in federal correctional facilities.

industrial good time credit pursuant to 28 C.F.R. § 523.14.
Respondents state that, from late 1991 to August 1992, Carbarcas
was assigned to work various details at FCI Fairton, but outside
the ambit of UNICOR. Carbarcas' first UNICOR assignment at FCI
Fairton occurred from August 3, 1992 to September 15, 1992.
Thereafter, Carbarcas was transferred to a BOP medical facility
in Rochester, Minnesota, and was not assigned to any work detail
for medical reasons. Carbarcas returned to FCI Fairton on
October 29, 1993 and received a UNICOR assignment in February
1994. He continued to work various UNICOR jobs at FCI Fairton
until January 27, 2000, when Carbarcas was transferred to FCI
Fort Dix. At FCI Fort Dix, Carbarcas was assigned non-UNICOR job
details until July 10, 2000. At that point, until the present
time, Carbarcas has worked various UNICOR job assignments. His
present position is Sorter in the Computer Recycling Factory.
See Lee Decl. At Ex. F (SENTRY Inmate History Work Detail
printout), and Declaration of Jeff Eobstell, Factory Manager at ¶
9.

    Respondents also disagree with petitioner's calculation of
"earned" extra good time credits. Respondents calculate that
Carbarcas is entitled to earn statutory good time (SGT) credit at
a rate of 10 days per month on his 30-year prison term without

parole, for a total of 3600 days SGT.[3]  Carbarcas also earned

meritorious good time (MGT) credit from October 29, 1991 through

August 2, 1992 for a total of 278 days MGT.[4]  Next, respondents

show that Carbarcas earned industrial good time (IGT) credit for

his two periods of UNICOR job assignments at FCI Fairton (from

August 3, 1992 through October 29, 1993, and from February 11,

1994 through January 27, 2000).[5]  He also earned IGT during his

UNICOR job assignments at FCI Fort Dix, from July 10, 2000 and

continuing to the present at a rate of 5 days per month.  Thus,

adding his MGT and his IGT, respondents contend that Carbarcas

has a total of 760 days of "earned" extra good time credit

_____

[3]   Statutory Good Time (SGT) is authorized by 18 U.S.C. §
4161.  See also 28 C.F.R. § 523.1(a); BOP Program Statement
5880.30 Chapter IV.

[4]   Meritorious Good Time (MGT) is available to inmates with
non-UNICOR job assignments.  MGT is not automatically granted; a
staff member may recommend an inmate for MGT based on the
inmate's work performance and the importance of the job
performed.  28 C.F.R. §§ 523.1(b), 523.10(a); BOP Program
Statement 5880.30, Chapter XIII at pp. 1, 3-4.

[5]   Industrial Good Time (IGT) is earned by inmates employed
by the Federal Prison Industries, Inc. (UNICOR).  IGT is
automatically awarded to inmates from the first day of their
UNICOR job assignment and continues for as long as the inmate is
employed by UNICOR, unless the award is disallowed.  28 C.F.R. §§
523.1(b), 523.1(a), 523.14; BOP Program Statement 5880.30,
Chapter XIII at pp. 1, 4-5.  Here, Carbarcas earned IGT from
August 3, 1992, the date of his first UNICOR job assignment,
which lasted for six weeks, and he continued to earn IGT for the
entire time he was hospitalized and on medical unassignment until
October 29, 1993.

(EGT).[6]  In addition, Carbarcas has received two Lump Sum Awards (LSA) while incarcerated at FCI Fort Dix.[7]  The first LSA was effective July 24, 2002 and the second on July 7, 2004.  Each LSA was for 30 days credit, for a total of 60 days LSA credit and 820 days total of all EGT credit.  This 820 day total does not include the continuing 5 days per month of IGT that Carbarcas is expected to earn if he continues with UNICOR job assignments. Respondents also report that Carbarcas has not had any forfeitures or withholdings of good time credits.  See Declaration of Fernando J. Messer ("Messer Decl.") at ¶¶ 3-5; Eobstell Decl. at Ex. 1, pp. 2-4 (SENTRY Sentence Monitoring

---

[6]  Extra Good Time (EGT) represents credits that may be earned by "old law" inmates (inmates sentenced for offenses preceding November 1, 1987, the effective date of the Sentencing Reform Act of 1984, P.L. 98-473, Title II, which abolished the federal parole system) in addition to SGT.  EGT is authorized by 18 U.S.C. § 4162 and includes IGT, MGT, and Lump Sum Awards.  It should be noted that even though Carbarcas is serving an "old law" sentence, he is not eligible for parole because his sentence for his Continuing Criminal Enterprise conviction is non-parolable under 21 U.S.C. § 848(c).  There is no dispute regarding petitioner's ineligibility for parole.

[7]  Lump Sum Awards (LSA) may be recommended by BOP staff to the Warden for an inmate's: (1) act of heroism; (2) voluntary and satisfactory performance of a hazardous assignment; (3) act which protects the lives of staff or inmates or the property of the United States; (4) suggestion which results in substantial improvement of a program or operation, or significant savings; and (5) any other exceptional or outstanding service.  A Warden is authorized to make an LSA not to exceed 30 days.  An LSA for more than 30 days must be presented by the Warden to the Regional Director for approval.  28 C.F.R. §§ 523.1(b), 523.10(a), 523.16; BOP Program Statement 5880.30, Chapter XIII pp. 5-6.

Computation Date printout); and Lee Decl. at Ex. E (SENTRY Sentence Monitoring Good Time Data printout) and Ex. F.

Thus, respondents have calculated Carbarcas' credits and mandatory release date, based on his 30-year prison sentence without parole, as follows:

**Date Computation Began** ("**DCB**") – **August 19, 1991** [the date sentence was imposed]

**Total Jail Credit** of **607 days** [December 20, 1989 through August 18, 1991]

**Expiration Full Term** ("**EFT**") **Date** – **December 20, 2019** [the DCB plus the 30-year term minus the 607 days jail credit]

**SGT** – **3600 days** [rate of 10 days/month for 30 years]

**Statutory Release Date** – **February 10, 2010** [the EFT (December 20, 2019) minus projected SGT (3600 days)]

**Projected Satisfaction Date** – **July 17, 2007** [the EFT (December 20, 2019) minus the SGT (3600 days) minus projected earned EGT (760 days to date, plus 5 days per month going forward) minus LSA (60 days) via mandatory release].[8]

──────────────

[8] Under 18 U.S.C. §§ 4163, 4164, an old law inmate ineligible for parole who has earned SGT and/or EGT is mandatorily released at the end of his term minus all good time deductions.  The inmate is deemed as if released on parole and his mandatory release is conditional with parole supervision until the expiration of his maximum term or EFT.  See BOP Program Statement 5880.30, Chapter VII at ¶ 3.b, 3.d and Appendix I at pp. 2, 3.

Carbarcas contends that he should have been released from prison on October 18, 2004, and that he should be compensated for every day he remains incarcerated before his projected release date on July 17, 2007.  He filed his habeas petition on or about June 7, 2005.  Respondents answered the petition on July 18,2005.

## II.  <u>DISCUSSION</u>

### A.  <u>Standard of Review</u>

Carbarcas seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

### B.  <u>Exhaustion of Administrative Remedies</u>

Respondents argue that Carbarcas has not exhausted his administrative remedies as required.  The records provided by the

BOP show that Carbarcas filed an Administrative Remedy Request form on April 11, 2005, asking that his EGT be recognized.  The remedy request was rejected by the Institutional Administrative Remedy Coordinator that same date.  The rejection notice informed Carbarcas that he needed to provide more specific information in proper form within five days.  See Lee Decl. at ¶ 9, Ex. B, p. 1, and Ex. C.  Carbarcas did not respond as directed; instead, he filed another Administrative Remedy Request, on April 21, 2005, with more specific information.  In his new request, Carbarcas asserted that he has not received all of the MGT, IGT and LSA to which he is entitled.  He contends that his total EGT is 742 days, his total LSA is 802 days, and he has 607 days jail credit, giving him a mandatory release date of February 12, 2005.[9]

Warden John Nash responded to this remedy request on May 3, 2005, stating that Carbarcas' mandatory release date of July 17, 2007 was computed correctly.  The response also informed Carbarcas of the time period and address for filing an appeal from the denial of his request.  Carbarcas did not file an appeal.  See Lee Decl. At ¶¶ 10, 11, Ex. B at p. 2, and Ex. D.

In his petition, Carbarcas contends that exhaustion of administrative remedies in a § 2241 petition is not a

---

[9]  The petition now contends that Carbarcas' mandatory release date was October 18, 2004 based on 990 days of an LSA as recommended by work supervisors for National Security Defense work in lieu of pay grade increases.  This claim was never presented in an administrative remedy request.

jurisdictional requirement, and that it would be futile since he is now serving beyond his mandatory release date.  He acknowledges that he filed a BP-9 Administrative Remedy Request, which was denied, but he argues that further appeal would be futile because the Warden's denial "merely parrots dictates from the BOP central office." (Pet. Mem. Of Law at p. 3).

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, the Court of Appeals for the Third Circuit has typically required § 2241 petitioners to exhaust their administrative remedies before applying to a federal court for relief.  See Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000). This policy promotes three goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and

unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. July 10, 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Further, in Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit. See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998). The court recognized that exhaustion could be excused where it would be futile. See id. In Snisky, the court found that the BOP would "unequivocally" deny the petitioner's relief, and he would return to the district court after the denial. Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim was meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20). Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached. See id. See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion

was not required because it was futile, as Regional Director
would "almost certainly" have denied request, and term of
imprisonment was completed).

In this case, the Court will excuse the exhaustion
requirement, as Carbarcas' claims are clearly without merit to
warrant habeas relief.

C.   Carbarcas' Claims Are Not Supported by the Record or Law

The most glaring defect in Carbarcas' petition is his claim
that he is entitled to an estimated 990 days of additional EGT
credit against his sentence pursuant to alleged LSAs purportedly
given for National Security Defense work at FCI Fairton in 1991.
As the regulations provide, LSAs are reserved for extraordinary
or exceptional conduct (such as heroism, voluntary acceptance of
hazardous assignments and protection of life and property) that
is not part of a regularly assigned duty.  28 C.F.R. § 523.16.
Moreover, only the Warden has the authority to make an LSA
limited to 30 days.  The Regional Director must approve an LSA in
an amount greater than 30 days.  Id.

Here, there is no record that Carbarcas was recommended for
LSAs in the amount he contends while at FCI Fairton.  The record
does show, however, that Carbarcas was recommended for a total of
60 days LSA while at FCI Fort Dix in July 2002 and July 2004.
Moreover, Carbarcas was not incarcerated at FCI Fairton during
the Gulf War in 1991, when the FCI Fairton supervisor allegedly

12

told workers that LSAs would be awarded over and above the IGT that they were earning for working two shifts, seven days a week in the cable factory at FCI Fairton.  Operation Desert Storm occurred in mid-January 1991 and ran through February 28, 1991, when hostilities ceased.[10]  Iraq officially negotiated a cease-fire in April 1991.  Carbarcas was not sentenced until August 19, 1991, and was first designated to FCI Fairton on October 29, 1991, long after the Gulf War had ended.  Thus, there is absolutely no factual or legal basis for Carbarcas' claim that he was entitled to receive a Lump Sum Award in the amount of 990 days.

Further, there is no provision in the § 523.16 or in the BOP Program Statement for an LSA to be recommended to an inmate in exchange for foregoing a performance pay increase or sacrificing a promotion to a higher pay grade.  Carbarcas cannot identify any supervisor who allegedly made this promise to him.  Moreover, while a staff member may make a recommendation, only the Warden may authorize such an award, and approval must be obtained from the Regional Director for any amount exceeding 30 days.  There is no documented evidence to show that any such recommendation was made, authorized, or approved in accordance with the regulations.

---

[10]  The Court takes judicial notice of these dates as referenced by respondents in their answer to the petition.  The information was obtained from the United States Department of Defense website, American Forces Information Service News Article, "The Operation Desert Shield/Desert Storm Timeline".

<u>See</u> Eobstell Decl. at ¶¶ 6, 10.  Consequently, there is simply no support in the law or in the factual record for Carbarcas' claim that he is entitled to 990 days LSA, and his claim for immediate release on this ground will be denied for lack of merit.

Finally, after careful scrutiny of the record, and application of the relevant law, the Court finds that the calculation of petitioner's available SGT and EGT, including MGT, IGT, and two LSAs in the amount of 30 days each, are accurate. The mandatory release date of July 17, 2007, as projected by the BOP, is supported by the record.  Therefore, the petition for habeas relief seeking immediate release from custody is denied.

**<u>CONCLUSION</u>**

Based upon the foregoing, the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 will be denied.  An appropriate Order accompanies this Opinion.


/s/ Freda L. Wolfson
_____

                              FREDA L. WOLFSON
                              United States District Judge

Dated: August 15, 2005

14
